UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LESLIE A. MAY

VERSUS

FEDEX FREIGHT SOUTHEAST,
INC. AND TODD WATSON

CIVIL ACTION

NO. 07-660-FJP-CN

### **RULING**

This matter is before the Court on the motion for summary judgment filed by the defendant FedEx Freight Southeast, Inc. ("FedEx")[1] and the motion for summary judgment filed by the defendant Todd Watson ("Watson").[2] Plaintiff Leslie May ("May" or "plaintiff") has filed oppositions to both motions.[3]

The Court declines to exercise supplemental jurisdiction over the state law claims alleged in this case pursuant to 28 U.S.C. § 1367. Because all of the claims brought against defendant Todd Watson are state law claims,[4] the Court shall dismiss all claims against Watson and deny his motion for summary judgment without prejudice as moot. The Court also declines to exercise

---

[1]Rec. Doc. No. 44.

[2]Rec. Doc. No. 45.

[3]Rec. Doc. Nos. 62 & 64.

[4]Claims against Watson are as follows: assault, battery, and intentional infliction of emotional distress.

supplemental jurisdiction over the state law claims brought against defendant FedEx;[5] therefore, FedEx's motion for summary judgment on all state law claims is denied without prejudice as moot.  The only remaining claims before the Court are the claims brought by plaintiff against FedEx pursuant to Title VII of the Civil Rights Act of 1964.[6]

## I. Factual Background

Plaintiff Leslie May was employed by FedEx in March of 2006 as a part-time supplemental office employee in the Baton Rouge office.  She reported to Chris Panks, the service center manager for the Baton Rouge office.  Upon her hire, plaintiff signed a receipt and acknowledgment of FedEx's Associate Handbook and a Workplace Violence form, thereby confirming that she understood how to direct complaints of harassment.  Plaintiff was to direct any complaints first to Chris Panks.  If Panks was unavailable, she was to direct complaints to her immediate supervisor Louis Catton.  Plaintiff was also advised on FedEx's intranet reporting procedures.

Plaintiff claims that sometime between June and July of 2006, she became uncomfortable with comments being made by co-worker Todd Watson.  Plaintiff also claims she advised Louis Catton of this,

---

[5]State law claims brought against FedEx include: violation of Louisiana Employment Discrimination law, Louisiana's Whistleblower Statute (La. R.S. 23:967), intentional infliction of emotional distress, and vicarious liability for employee's alleged assault and battery.

[6]42 U.S.C. 2000e, *et seq.*

and he told plaintiff not to report the comments to Panks but rather to ignore the alleged behavior. Plaintiff contends Watson's behavior continued, and on September 15, 2006, Watson followed plaintiff to a pet store after they encountered each other at a red light. Plaintiff contends she was on her way home, but told Watson she was going to the pet store so he would not follow her. Plaintiff also alleges that while in the pet store, Watson grabbed her buttocks and then smiled at her. Watson claims plaintiff rolled down her window at the intersection, told him she was going to the pet store, and said "yes" when he asked if he could go along. Watson also claims plaintiff hugged him when they reached the pet store, and that he inadvertently touched plaintiff's buttocks while playing with the store owner's child. Watson contends he said "excuse me" after this occurred. Watson also claims he left very soon after this "touching" occurred.

Plaintiff immediately reported the incident to the Livingston Parish Sheriff's Office and reported it to service center manager Chris Panks on September 17, 2006. Panks asked plaintiff to prepare a written statement giving details of her complaint against Watson, which plaintiff submitted on September 19, 2006. In addition to detailing the pet store incident, the statement also alleged that Watson made inappropriate sexual comments to her and showed her a pornographic picture at work. In this statement, plaintiff acknowledged that she should have said something when the

alleged conduct began, but she "just blew it off and just ignored all the comments," until the incident in the pet store.[7] Panks reported the incident and forwarded the statement to Lance Moll, Managing Director of Operations, and Curtis Hamrick, Regional Human Resources Manager.

Subsequently, Panks met with Watson and advised him that the complaints made by plaintiff were being investigated. Watson ultimately admitted showing plaintiff the pornographic picture but denied all other allegations. Watson was also required to submit a written statement. Panks interviewed Louis Catton, Joann Robertson (co-worker of plaintiff's), Watson, and Sherri Gafford, the owner of the pet store, as part of the investigation. During the investigation, Watson was placed on suspension. Following the investigation, Panks submitted his findings, and based on directives received from Human Resources, issued a written reprimand to Watson. No further discipline was taken against Watson since he had never previously been reported or reprimanded for violating company policy.

Dissatisfied with this result, plaintiff contacted Panks and advised that she would not be returning to work as long as Watson remained employed by FedEx. Panks responded that he hoped plaintiff would return to work; however, plaintiff never returned

---

[7]Rec. Doc. No. 44-3, p. 4, citing Exhibit A at p. 114 and Exhibit E.

to FedEx.

On February 13, 2007, plaintiff filed a charge questionnaire with the EEOC alleging sex discrimination and hostile work environment. Plaintiff's May 31, 2007 EEOC Charge alleges the same.

Under FedEx's administrative separation procedure, when a supplemental employee is inactive for six months, the company must administratively separate that employee. On March 30, 2007, FedEx sent correspondence to May advising her that she was administratively separated from the company since she had not reported to work for six months. This letter also informed plaintiff she could re-apply for employment with FedEx in the future. Plaintiff does not dispute that she did not return to work for six months and did not re-apply for employment with FedEx.

After receiving a right to sue letter from the EEOC, plaintiff filed this lawsuit against FedEx and Todd Watson, alleging the claims set forth above. The Court will only hear the federal claims brought in this case as set forth above.

The Court now turns to a discussion of the Title VII claims and relevant law in this case.

**II. Law and Analysis**

**A. Summary Judgment Standard**

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8]  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[10]  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[11]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which

---

[8] Fed. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  See also *Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[10] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[11] *Id.* at 1075.

there is a genuine issue for trial.[12] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[13] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[14] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[15] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[16]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

---

[12]*Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[13]*Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

[14]*Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[15]*McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[16]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

summary judgment."[17]  The Court now turns to a discussion of each of plaintiff's claims.

### B. Retaliation under Title VII

#### 1. Plaintiff failed to exhaust administrative remedies; Court has no jurisdiction

A court may entertain a Title VII claim only if the aggrieved party has exhausted her administrative remedies.[18]  A Title VII plaintiff must file a charge with the EEOC before filing suit in federal court.[19]  The scope of the judicial complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.[20]  The Fifth Circuit has stated that "the plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger."[21]

Plaintiff's filings with the EEOC charge sex discrimination and hostile work environment only.  There is no allegation of retaliation, and even in referencing her termination, plaintiff did

---

[17] *Id.* at 248, 106 S.Ct. at 2510.

[18] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002).

[19] 42 U.S.C. § 2000e-5(f)(1).

[20] *McClain v. Lufkin Industries, Inc.*, 519 F.3d 264, 274 (5th Cir. 2008), citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).

[21] *Fellows v. Universal Restaurants, Inc.,* 701 F.2d 447, 450-51 (5th Cir. 1983).

not allege that it was retaliatory.  The fact that plaintiff failed to check the box by "Retaliation" and make any other allegations of retaliation with respect to her discrimination claims confirms that she has failed to exhaust administrative remedies on this claim.  A plethora of Fifth Circuit jurisprudence supports the Court's finding.[22]

In her opposition, plaintiff concedes this failure, but then attempts to direct the Court's interest elsewhere arguing irrelevant and inapplicable legal theories.[23]  The Court simply does

---

[22] *Luna v. Lockheed Martin Corp.*, 54 Fed. Appx. 404, 2002 WL 31687698, at *1 (5th Cir. Oct. 22, 2002), citing *Robinson v. Rubin*, 77 F.Supp.2d 784, 792 (S.D. Tex. 1999)(granting defendant's motion for summary judgment on claimant's race and sex discrimination claims because, where claimant marked only the box for "retaliation reprisal" on his EEOC complaint, claimant's race and sex discrimination claims would not have fallen within the scope of a reasonable EEOC investigation into claimant's retaliation claims); *Lee v. Kroger Co.*, 901 F.Supp. 1218, 1224 (S.D. Tex. 1995)("Because [claimant] set forth only an allegation of retaliation in his EEOC charge, [claimant] is precluded from maintaining additional claims of racial discrimination and harassment in the instant lawsuit").  See also *Teffera v. North Texas Tollway Authority*, 112 Fed. Appx. 18, 2004 WL 2980294, at *2 (5th Cir. Dec. 22, 2004) ("Although Teffera checked 'retaliation' on the *pre-charge EEOC form*, he did *not* do so on the EEOC charge; there, he referenced only discrimination because of national origin.  The district court correctly dismissed Teffera's Title VII retaliation claim for not exhausting it with the EEOC")(emphasis in original).

[23] After conceding that she has not exhausted administrative remedies on her retaliation claim, plaintiff argues that she has suffered a tangible employment action.  Interestingly, plaintiff cites no case law holding that so-called "negligent indifference" to the alleged stalking of an employee constitutes a "tangible employment action" under Title VII.  Further, FedEx is absolutely correct that plaintiff has applied this term in the wrong

(continued...)

not have jurisdiction over plaintiff's retaliation claim since she failed to include it in her EEOC charge. Therefore, summary judgment is granted on this claim.

### 2. Plaintiff cannot overcome FedEx's legitimate non-discriminatory reason for her termination.[24]

In the alternative, the Court notes that it would grant summary judgment in favor of FedEx on a properly alleged retaliation claim under the law and facts of this case. The record is void of any summary judgment type evidence which would create a material issue of fact in dispute as to whether plaintiff suffered an adverse employment action. Based on her apparent dissatisfaction with FedEx's discipline of Watson, plaintiff voluntarily abandoned her position even though she was told by FedEx representatives that they hoped she would return to work. The Fifth Circuit affirmed a summary judgment granted by a district court where an employee voluntarily decided to stop coming to work.[25] Once plaintiff was absent for six months, FedEx was

---

[23](...continued)
context, as tangible employment actions are relevant only in the case of supervisor sexual harassment claims, which is not the case before the Court. Watson was plaintiff's co-worker, not her supervisor; thus, the *Faragher/Ellerth* affirmative defense is inapplicable to the facts of this case.

[24]The Court finds no need to engage in a lengthy discussion of Title VII retaliation since this claim is not properly before the Court. The Court makes its finding in the alternative out of an abundance of caution.

[25]*Sabzevari v. Reliable Life Insurance Co.*, 264 Fed. Appx.
(continued...)

required by its administrative separation procedure to terminate the plaintiff based on her inactivity.  Plaintiff does not dispute these facts.  Further, plaintiff has not alleged or argued, and the facts of the case do not support, that she was constructively discharged.  Thus, the Court finds in the alternative the summary judgment should be granted in favor of FedEx on plaintiff's retaliation claim as a matter of fact and law.

### C. Sexual Harassment/Hostile Work Environment

In a Title VII sexual harassment case, the plaintiff must establish the following: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3)  the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.[26]

In *Meritor Savings Bank v. Vinson*, the United States Supreme Court held that in order for a plaintiff to establish actionable harassment, such conduct must be sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an

---

[25](...continued)
392, 2008 WL 276307 at *4 (5th Cir. Jan. 31, 2008).

[26]*LeMaire v. Louisiana Department of Transportation & Development,* 480 F.3d 383, 393 (5th Cir. 2007); see also *Harvill v. Westward Communications, L.L.C.*, 433 F. 3d 428, 434 (5th Cir. 2005), citing *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir. 2001).

abusive working environment.[27]  An employee need not suffer the loss of pay, benefits, or the job itself in order to have a claim for sexual harassment.  The Court further held that in order to establish actionable harassment, the conduct must be both subjectively and objectively offensive.[28]  Specifically, plaintiff must prove that a reasonable person would have been offended by the conduct (objective element).  In addition, plaintiff must prove that she was actually offended by the conduct (subjective element).[29]  Whether an environment is hostile or abusive is determined by looking at all of the circumstances, including the "frequency of the discriminatory conduct; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[30]

The Court finds that plaintiff has failed to establish a *prima facie* case of a hostile work environment because she has failed to

---

[27] 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L.Ed.2d 49 (1986).  In *Harvill v. Westward Communications, L.L.C.*, the Fifth Circuit Court of Appeals clarified though it may have previously cited the standard as "severe AND pervasive," the appropriate standard is "severe OR pervasive."  433 F. 3d 428, 434 (5th Cir. 2005).

[28] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275, 2283, 141 L.Ed.2d 662 (1998).

[29] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22, 114 S. Ct. 367, 370, 126 L.Ed.2d 295 (1993).

[30] *Id.* at 23, 114 S.Ct. At 371.

prove that the alleged harassment was so severe or pervasive as to affect a term, condition or privilege of employment. Plaintiff has also failed to establish that FedEx knew or should have known of the alleged harassment and then failed to take prompt remedial action. Each of these issues shall be addressed below.

### 1. Alleged Conduct Not Sufficiently Severe or Pervasive to Affect Term, Condition or Privilege of Employment

In addition to the pet store incident discussed previously herein, plaintiff has alleged that the following conduct by Watson subjected her to a hostile work environment: sexually suggestive remarks about plaintiff's attire; questions about her dating outside of her race; being shown pornographic images at work on one occasion; and comments about another co-worker being jealous of the attention Watson was giving plaintiff. Defendant contends the alleged conduct does not rise to the level of severe or pervasive under applicable jurisprudence. Defendant also notes that the incident at the pet store did not happen at work, during work hours, or in the course and scope of either plaintiff or defendant's employment.

The Fifth Circuit Court of Appeals has declined to recognize conduct more egregious than that allegedly committed by Watson as actionable sexual harassment in prior decisions.[31] Most notably,

---

[31] See e.g., *Williams v. U.S. Dept. of Navy*, 149 Fed. Appx. 264, 2005 WL 2404757 (5th Cir. Sept. 29, 2005); *Hockman v.*
(continued...)

the court in *Shepherd v. Comptroller of Public Accounts of the State of Texas* affirmed a summary judgment in favor of the employer finding that the plaintiff failed to show the alleged conduct was severe or pervasive as to alter a term, condition, or privilege of employment.[32]  In that case, the plaintiff alleged that a male co-worker harassed her over a period of two years when he stared at her, touched her arm on several occasions, rubbed one of his hands from his shoulder down to her wrist while standing beside her, and made graphic remarks to the plaintiff.  The allegations in the *Shepherd* case were clearly more severe or pervasive than those alleged by May in the instant case.

The Fifth Circuit also affirmed summary judgment in another case involving conduct similar to that alleged by May.  In *Hockman v. Westwood Communications, L.L.C., et al.*,[33] the plaintiff claimed that her immediate supervisor commented on her body and her behind, made comments to plaintiff on the body of other employees, slapped plaintiff's behind with a newspaper, brushed up against her breasts and behind, attempted to kiss her, asked her to come in early so they could be alone together, and once stood in the doorway of the

---

[31](...continued)
*Westward Communications, L.L.C.*, 407 F.3d 317 (5th Cir. 2004).

[32]168 F.3d 871 (5th Cir. 1999).

[33]407 F.3d 317 (5th Cir. 2004).

ladies' room to watch plaintiff wash her hands.[34]  The Fifth Circuit affirmed the district court's grant of summary judgment in favor of the defendant, finding that Hockman failed to establish that the harassing behavior was so severe or pervasive as to affect a term, condition, or privilege of her employment.[35]  Again, the *Hockman* case demonstrates that far more severe conduct than that alleged by plaintiff herein must be proven to survive summary judgment.

The Fifth Circuit case *Taylor-Rogers v. Rob & Stucky LTD* cited by plaintiff in her opposition in no way supports plaintiff's argument, but rather serves to further demonstrate that plaintiff's allegations are not actionable.[36]  The conduct involved in *Taylor-Rogers* involved a co-employee rubbing against plaintiff on a daily basis, simulating a sex act with plaintiff, and unbuttoning her blouse and touching her breast beneath her bra.  The facts of the case before the Court are completely distinguishable from *Taylor-Rogers* in that they are worlds apart in severity.

Plaintiff's allegations, while offensive,[37] are at least similar to, if not far less extreme, than the conduct set forth in the Fifth Circuit cases discussed above.  While the alleged conduct

---

[34]*Id.* at 321-22.

[35]*Id.* at 329.

[36]82 Fed. Appx. 974, 2003 WL 22955876 (5th Cir. Dec. 12, 2003).

[37]The Court obviously does not approve or condone such action in the workplace.

by Watson may have been inappropriate and even offensive to plaintiff, it does not rise to the level required by the law to be severe or pervasive under the facts of this case.  Further, plaintiff has failed to establish the existence of a genuine issue of material fact that Watson's alleged conduct unreasonably interfered with her work performance as required by law.  Thus, summary judgment should be granted in favor of FedEx on plaintiff's hostile work environment claim.

### 2. Prompt Remedial Action Taken by FedEx[38]

The plaintiff contends she reported the alleged conduct by Watson to her direct supervisor Louis Catton and was told to "ignore it."  FedEx contends plaintiff did not properly report any harassing behavior to manager Chris Panks until two days following the pet store incident.  Plaintiff admitted in her deposition that she received training about reporting sexually harassing behavior at work, she understood to report to the manager and then the supervisor if the manager was not there.[39]  She thus admitted that she was to report to Panks under FedEx's reporting policy and stated: "I never told Chris [Panks] about the sexual comments and the porn that Mr. Watson brought, which he admitted to showing me

---

[38] The Court again notes that plaintiff's discussion of the *Faragher/Ellerth* affirmative defense is inapplicable to the case at bar because the alleged harasser is not plaintiff's supervisor.

[39] See Plaintiff's Deposition pp. 98-99.

already, but no."[40]  FedEx also argues that the conversation plaintiff had with Catton was not directly about Watson's sexual remarks to her, but rather involved "feeling uncomfortable" with an alleged relationship between Watson and another co-worker.[41]

After plaintiff notified Panks of the alleged conduct on September 17, 2006, Panks immediately initiated an investigation during which Watson was suspended.  Following the investigation, Watson was issued a written corrective action notice for violating company policy.  Though plaintiff was clearly dissatisfied with this result, since Watson lacked any previous negative work history, FedEx believed this discipline was sufficient to address the problem.  Thus, plaintiff cannot prove the fifth element of a *prima facie* hostile work environment claim because FedEx took prompt remedial action as soon as it had notice of the problem.[42]

---

[40]*Id.* at pp. 116-117.

[41]Plaintiff testified: "And I started thinking, like, what's going on, you know, I don't want to be in no love triangle between Joann and Todd because clearly the behavior in the office between them two, you could tell there was something there.  So that's when I was, like, I don't want to be no part of this and that is when I went to Louis and confronted Joann regarding that situation.  Because I didn't want to have no part in it and I felt very uncomfortable."  Plaintiff's Deposition, pp. 101-102.

[42]The Court recognizes the parties dispute the facts surrounding plaintiff's reporting Watson's alleged conduct.  The Court notes that even if a material issue of fact existed as to this element of the *prima facie* case, plaintiff's claim would fail because she clearly cannot show that the alleged harassment was sufficiently severe or pervasive such that it altered a term, condition, or privilege of her employment.

**III. Conclusion**

For the reasons set forth above, the Court finds that FedEx's motion for summary judgment should be granted on all Title VII claims brought by plaintiff under the law and facts of this case.[43] The Court denies Watson's motion for summary judgment without prejudice as moot since all state law claims have been dismissed as to both defendants and Todd Watson has been dismissed from this case.

Judgment shall be entered accordingly.

Baton Rouge, Louisiana, August 12, 2009.

FRANK J. POLOZOLA
MIDDLE DISTRICT OF LOUISIANA

---

[43]The Court has considered all of the contentions of the parties whether or not specifically discussed herein.